UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NEW WAVE LENDING GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>SPROUT MORTGAGE ASSET TRUST and SPROUT MORTGAGE, LLC,<br><br>Defendants. | Civil Action No. 22-6304<br><br>COMPLAINT & JURY DEMAND |

Plaintiff New Wave Lending Group, Inc. ("NW"), by and through its attorneys, Offit Kurman, PA, brings this Complaint against Defendants Sprout Mortgage Asset Trust (the "Trust") and Sprout Mortgage, LLC (the "LLC" and together with the "Trust" are referred to as "Sprout"), for fraud, breach of contract, promissory estoppel and unjust enrichment. In support of its Complaint, Plaintiff New Wave avers as follows:

## NATURE OF THE ACTION

1. This action arises out of Defendant Sprout's default in purchasing certain loans from Plaintiff and its default in the payment of monies that it owes for loans that it did, in fact, purchase.

2. Plaintiff New Wave solicited bids from multiple investors for the purchase of certain loans that were memorialized by promissory notes and secured by mortgages that Plaintiff New Wave funded and closed with borrowers.

3. Subject to the loans meeting certain specific conditions, Defendant Sprout made written offers to purchase certain loans or "pools" of loans for which Plaintiff New Wave had solicited bids.

4. Plaintiff New Wave accepted in writing Defendant Sprout's written offers to

purchase certain loans or "pools" of loans -- thereby forming a binding and enforceable agreement for the sale and purchase of loans that Plaintiff New Wave had funded and closed with borrowers.

5. At the time Defendant Sprout offered and Plaintiff New Wave accepted Defendant Sprout's offer, Defendant Sprout owed Plaintiff a duty which it failed to fulfill of disclosing its financial inability to complete the purchase of Plaintiff's loans or "pools" of loans and Defendant Sprout's decision to close its business.

6. Upon the parties reaching a binding and enforceable agreement as to the sale and purchase of certain loans or "pools" of loans, Defendant Sprout commenced its due diligence of such loans.

7. Despite the loans having satisfied all agreed upon conditions, Defendant Sprout has failed and refused to complete the purchase of the loans it agreed and was contractually obligated to purchase.

8. In addition, as to certain loans upon which Defendant Sprout closed and completed its purchase from Plaintiff New Wave, Defendant Sprout has failed and refused to remit the agreed-upon "Holdback" it "retained" in trust as part of its purchase – despite satisfaction (upon due diligence) of Defendant Sprout's conditions.

## THE PARTIES, JURISDICTION AND VENUE

9. Plaintiff New Wave is a corporation organized pursuant to the laws of the State of California, with its principal place of business located at 1199 Fairway Dr., City of Industry, CA 91789.

10. Defendant Sprout Mortgage Asset Trust is a Delaware statutory trust, organized pursuant to Del. Code Ann. tit. 12, Section 3804(a), with its principal place of business located at 90 Merrick Avenue, East Meadow, NY 11554 and neither it nor its members is a citizen of the

State of California.

11. Defendant Sprout Mortgage, LLC is a limited liability company duly formed and existing under the laws of the State of Delaware, with its principal place of business located at 90 Merrick Avenue, East Meadow, NY 11554, and neither it nor its members is a citizen of the State of California.

12. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. §1332 because the Complaint seeks legal remedies in excess of $75,000 and there is a complete diversity of citizenship between Plaintiff New Wave and Defendant Trust and Defendant LLC.

13. This Court has personal jurisdiction over Defendant Sprout because it consented to this Court's jurisdiction at Section 17 of the FMLPA. The Court also has personal jurisdiction over Defendant Sprout because it committed one or more actionable acts in New York.

14. Moreover, venue is proper as Plaintiff FFF and Defendant Sprout consented and waived any objection to venue in the Southern District of New York at Section 17 of the FMLPA.

15. Pursuant to Section 17 of the FMLPA, New York law applies without regard to the conflicts of law principles of New York law.

## FACTUAL BACKGROUND

*The Policy and Practice of the Parties*

16. This case involves the non-qualified mortgage ("non-QM") lending business.

17. Plaintiff New Wave is a non-QM lender.

18. As part of its business, Plaintiff New Wave "generates" loans by soliciting and securing borrowers and funding and closing on loans to those borrowers.

19. Like many other non-QM lenders, in order to source the funds necessary to fund and close the loans it "generates" with borrowers, Plaintiff New Wave relies upon several

different "warehouse" loans or lines of credit.

20. Because it relies upon financing to fund and close the loans it "generates," as is the practice among non-QM lenders -- Plaintiff New Wave does not typically hold such loans for more than several weeks.

21. Plaintiff New Wave relies upon a number of "investor" groups to purchase the loans it funds and closes.

22. It was the policy and practice of the parties that, after New Wave funded and closed certain loans to borrowers, it solicited bids from multiple investors for the sale and purchase of those loans.

23. Defendant Sprout is one such "investor" group that, in the past, regularly purchased loans that Plaintiff New Wave funded and closed.

24. In connection with Plaintiff New Wave's regular practice of selling and Defendant Sprout's regular practice of purchasing loans funded and closed by Plaintiff New Wave – Plaintiff New Wave and Defendant Sprout entered into a Flow Mortgage Loan Purchase and Sale Agreement, dated July 7 2021 (the "FMLPA").

25. The FMLPA sets forth the overarching methodology for Defendant Sprout's purchase of loans funded and closed by Plaintiff New Wave.

26. However, the FMLPA does not address a number of items with respect to Plaintiff New Wave's actual sale and Defendant Sprout's purchase of loans.

27. Specifically, the FMLPA does not address the specific terms of Plaintiff New Wave's sale and Defendant Sprout's purchase of Plaintiff New Wave's loans, including the price of such loans.

28. Additionally, the FMLPA does not address when Defendant Sprout's actions,

conduct or writings constitutes an offer, and what actions, conduct or writings by Plaintiff New Wave constitutes an acceptance of such offer, so as to create a binding and enforceable agreement as to the sale and purchase of such loans.

29. As to any loan or "pool" of loans Defendant Sprout was interested in purchasing, Defendant Sprout would issue a written trade confirmation reflecting its offer to purchase same, subject to the loan or "pool" of loans meeting certain specific conditions.

30. Plaintiff New Wave would accept in writing Defendant Sprout's written offer to purchase any loan or "pool" of loans it had funded and closed with borrowers by signing Defendant Sprout's trade confirmation and transmitting it back to Defendant Sprout -- thereby forming a binding and enforceable agreement.

31. Plaintiff New Wave would then furnish Defendant Sprout's mortgage custodian with a "collateral package" specified by Defendant Sprout, and would further furnish Defendant Sprout with a loan package including the credit and closing documents related to Sprout's trade confirmation.

32. Upon clearance and approval of the "collateral package," the loan or "pool" of loans was "Cleared for Purchase."

33. Defendant Sprout's verification that a loan or "pool" of loans was "Cleared for Purchase" meant that all conditions to Defendant Sprout's closing on the loan or "pool" of loans were satisfied, and that nothing other than ministerial acts awaited the closing on Plaintiff New Wave's sale and Defendant Sprout's purchase of the loan or "pool" of loans.

34. As a result of the FMLPA and the long history of Plaintiff New Wave and Defendant Sprout doing business with one another, the parties had a special relationship with a heightened level of trust and confidence.

*The $32,189,270 in Loans Upon Which Defendant Sprout Defaulted*

35. From on or about January 20, 2022 through on or about February 15, 2022, Plaintiff New Wave solicited bids from multiple investors for the purchase of fifty-one (50) separate loans (the "Loans") that Plaintiff New Wave had funded and closed. (*See* Exhibit A).

36. The Loans ranged in the principal amount of $220,000 to $1,950,000 and have a total principal value of $32,864,270.

37. Defendant Sprout issued three (3) written trade confirmations reflecting its offer to purchase the Loans or "pools" thereof, subject to the Loans meeting certain specific conditions.

38. Each trade confirmation states:

This Trade Confirmation (this "Letter") dated XXXXX XX, 2022 (the "Confirmation Date") confirms the agreement of (i) Sprout Mortgage, LLC (the "Purchaser") to purchase and (ii) New Wave Lending Group (the "Seller") to sell, on or about XXXXX XX, 2022, or such other date as mutually agreed by the Seller and Purchaser (the "Closing Date"), of the first lien residential mortgage loans listed on Schedule II attached hereto (the "Mortgage Loans") along with the servicing rights related thereto (the "Transaction").

39. Plaintiff New Wave accepted in writing Defendant Sprout's written offers to purchase the Loans by signing Defendant Sprout's trade confirmations and transmitting them back to Defendant Sprout.

40. The signed trade confirmations constitute binding and enforceable agreements.

41. At the time Defendant Sprout offered and Plaintiff New Wave accepted Defendants Sprout's offer, Defendant Sprout was financially unable to complete the agreed-upon purchase of Plaintiff's loans or "pools" of loans and had decided to close its business.

42. Defendant Sprout possessed superior knowledge to Plaintiff New Wave as to its financial inability to complete the purchase of the Loans and decision to close its business, such information was not publicly available, and Defendant Sprout knew that Plaintiff New Wave was

acting on the basis of incorrect and mistaken information.

43. For each of the Loans or "pools" thereof, Plaintiff New Wave then furnished Defendant Sprout or its agent with a "collateral package," and further furnished Defendant Sprout with a loan package including the credit and closing documents – all specified by Defendant Sprout.

44. Ultimately, between on or about March 7, 2022 and April 7, 2022, Defendant Sprout verified that all of the specific conditions set forth in the trade confirmations were satisfied and that all of the Loans or "pools" thereof were "Cleared for Purchase."

45. Thus, Defendant Sprout does not dispute that all agreed upon conditions as to each of the Loans or "pools" thereof it agreed to purchase at a specified price were satisfied – thereby obligating Defendant Sprout to fulfill its agreement to close on the purchase of the Loans or "pools" thereof.

46. Moreover, to the extent there were any other pre-closing conditions, Defendant Sprout confirmed that they were all satisfied or waived the enforcement of such conditions.

47. Defendant Sprout never previously failed to close upon any of Plaintiff New Wave's loans that Sprout had "Cleared for Purchase."

48. Nevertheless, despite repeated written demands – all of which have been ignored – Defendant Sprout has failed and refused to abide by its agreement to complete the purchase of any of the Loans.

## COUNT I – FRAUD

49. Paragraphs 1 through 48 are incorporated by reference as if fully set forth herein.

50. Plaintiff New Wave and Defendant Sprout had a special relationship with a heightened level of trust and confidence.

51. Defendant Sprout further possessed superior knowledge to Plaintiff New Wave as to is financial inability to complete the purchase of the Loans and decision to close its business, such information was not publicly available, and Defendant Sprout knew that Plaintiff New Wave was acting on the basis of incorrect and mistaken information.

52. Notwithstanding all of this, Defendant Sprout intentionally concealed and failed to disclose to Plaintiff New Wave the material fact of its financial inability and decision to close its business.

53. Indeed, on July 6, 2022, Defendant Sprout announced that it was shutting-down its operations.

54. Defendant Sprout concealed such information with the intention of inducing Plaintiff New Wave's entry into binding and enforceable agreements as to the sale and purchase of the Loans.

55. Defendant Sprout's fraudulent omission and intentional concealment has caused Plaintiff New Wave to suffer substantial damages.

## COUNT II – BREACH OF CONTRACT

56. Paragraphs 1 through 55 are incorporated by reference as if fully set forth herein.

57. Defendant Sprout's issuance of three (3) trade confirmations constituted its offer to purchase the Loans or "pools" thereof, subject to the Loans meeting certain specific purchase conditions.

58. Plaintiff New Wave accepted in writing Defendant Sprout's written offers to purchase the Loans or "pools" thereof by signing Defendant Sprout's trade confirmations and transmitting them back to Defendant Sprout.

59. The signed trade confirmations constitute binding and enforceable agreements.

60. Defendant Sprout verified that all of the Loans were "Cleared for Purchase" -- confirming that all of the specified conditions (and any other alleged terms and conditions) to closing were satisfied and/or waived.

61. Despite repeated written demands – all of which have been ignored – Defendant Sprout has failed and refused to abide by its agreement to complete the purchase of any of the Loans.

62. As a result of Defendant Sprout's breaches, Plaintiff New Wave has suffered real damages, including, but not limited to, the difference between the agreed upon price for Plaintiff New Wave's sale and Defendant Sprout's purchase of the Loans and the price at which Plaintiff was forced to sell the Loans to a third-party in order to mitigate its damages, together with all other costs and expenses of carrying the Loans before Plaintiff New Wave successfully sold them to a third-party.

### COUNT III – PROMISSORY ESTOPPEL

63. Paragraphs 1 through 62 are incorporated by reference as if fully set forth herein.

64. Defendant Sprout's issuance of trade confirmations constituted unambiguous promises that, subject to the Loans satisfying specific conditions, it would complete the purchase of the Loans.

65. Plaintiff New Wave relied upon such promises in not making the Loans available for purchase by other investors and removing them from the market available for purchase by others.

66. Defendant Sprout's verification that the Loans were "Cleared for Purchase" constituted an unambiguous and unconditional promise to purchase the Loans.

67. Plaintiff relied upon such promises in not making the Loans available for

purchase by other investors and removing the Loans from the market available for purchase by others.

68. Plaintiff New Wave's reliance upon Defendant Sprout's promises was both reasonable and foreseeable.

69. As a result of Defendant Sprout's actions, Plaintiff New Wave has suffered real damages, including, but not limited to, the difference between the agreed upon price for Plaintiff New Wave's sale and Defendant Sprout's purchase of the Loans and the price at which Plaintiff was forced to sell the Loans to a third-party in order to mitigate its damages, together with all other costs and expenses of carrying the Loans before Plaintiff New Wave successfully sold them to a third-party.

## COUNT IV – BREACH OF CONTRACT

70. Paragraphs 1 through 69 are incorporated by reference as if fully set forth herein.

71. Between December 3, 2021 and January 12, 2022, Defendant Sprout issued approximately seven (7) trade confirmations for the purchase of fifty-two (52) separate loans (the "Purchased Loans") from Plaintiff New Wave at agreed-upon prices and subject to certain specific conditions set forth in written trade confirmations Defendant Sprout issued to Plaintiff New Wave. (*See* Exh. B).

72. Between January 20, 2022 and February 25, 2022, Defendant Sprout closed on its purchase of the Purchased Loans.

73. Some or all of the closings on the Purchased Loans occurred before Defendant Sprout confirmed that the conditions relating to credit and closing documents set forth in the trade confirmations had been satisfied.

74. Accordingly, as set forth in purchase advices that Defendant Sprout issued for

the Purchased Loans, and as agreed between the parties Defendant Sprout held-back approximately 2% of the principal of each of the Purchased Loans (the "Holdback") – which Defendant Sprout was to pay upon confirmation through due diligence that the Purchased Loans satisfied the credit and closing document conditions set forth in the trade confirmations (the "Holdback Clearance Conditions").

75. The total Holdback amount for all of the Purchased Loans was $665,872.60 (the "Holdback Amount").

76. Defendant Sprout held the Holdback Amount in trust for Plaintiff New Wave.

77. Defendant Sprout has confirmed that the Holdback Clearance Conditions have been satisfied for all of the Purchased Loans as long ago as March 22, 2022 -- thereby requiring Defendant Sprout to pay the entire Holdback Amount.

78. Defendant Sprout has only paid $98,371 of the Holdback Amount – leaving $567,501.60 of the Holdback Amount that it owes and has failed and refused to pay.

79. Despite due demand, Defendant Sprout has, in breach of its agreement, failed and refused to pay the $567,501.60 balance owing of the Holdback Amount.

## COUNT V – UNJUST ENRICHMENT

80. Paragraphs 1 through 79 are incorporated by reference as if fully set forth herein.

81. As a result of Defendant Sprout's failure to pay the Holdback Amount, which was held in trust for Plaintiff New Wave, Defendant Sprout was grossly enriched.

82. Defendant Sprout's enrichment resulting from its failure to pay over the Holdback Amount was at Plaintiff New Wave's expense.

83. It would be contrary to equity and good conscience to permit Defendant Sprout to continue to retain monies it was holding, in trust, for the benefit of Plaintiff New Wave as part

of the purchase price for the Purchased Loans.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff New Wave demands judgment in its favor and against Defendant Sprout, as follows:

(a) On Counts I, II and III, for general damages and losses representing the difference between the agreed upon price for Plaintiff New Wave's sale and Defendant Sprout's purchase of the Loans and the price at which Plaintiff was forced to sell the Loans to a third-party in order to mitigate its damages, together with all other costs and expenses of carrying the Loans before Plaintiff New Wave successfully sold them to a third-party, but not less than Five Million Dollars;

(b) On Counts IV and V, for the unpaid Holdback Amount – totaling $567,501.60, plus interest;

(c) On Count V, for the imposition of a constructive trust as to the Holdback Amount;

(d) On all Counts, for reasonable attorneys' fees, pre and post-judgment interest, and costs of suit; and

(e) for such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury pursuant to Fed. R. Civ. P. 38 on all issues so triable.

Dated: July 25, 2022
New York, New York

OFFIT KURMAN, P.A.

By: Daniel I. Goldberg
590 Madison Avenue, 6th Floor
New York, NY 10022
347-589-8542
*Attorneys for Plaintiff*